UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MAFAYETTE M. FIELDS,

              Plaintiff,

v.                                                  Case No. 20-cv-1288-pp

ZWIRSCHITZ, Food Service Administrator,
CARR, Secretary of Department of Corrections,
CATHY JESS, and SGT. RUCINSKI,

              Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT**

---

      Mafayette M. Fields, an inmate at Oshkosh Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C.

1

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 21, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $21.64. Dkt. No. 5. The court received that fee on September 17, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff is incarcerated at the Oshkosh Correctional Institution. Dkt. No. 1 at ¶6. He is suing Zwirschitz, who is the food service administrator at Oshkosh, id. at ¶7; Carr, the Secretary of the Wisconsin Department of Corrections, id. at ¶8; Cathy Jess, the Warden of Oshkosh, id. at ¶9; and Sgt. Rucinski, who works at Oshkosh, id. at ¶10.

According to the plaintiff, the kitchen service staff work on an assembly line where the dessert person grabs each tray, places the dessert on the tray and hands the tray to the inmate; the serving inmates wear gloves but do not

3

use tongs. Id. at ¶14. The plaintiff asserts that the first time staff served rice crispy treat desserts on his unit, the unit sergeant told the kitchen worker in line before the dessert server to hand the plaintiff his tray to avoid cross-contamination of a pork product to the plaintiff's tray; he says other Muslim inmates refused to eat at all. Id. at ¶15. The plaintiff says that the second time staff served rice crispy treats, he did not eat from his tray because he had food of his own in his room. Id. at ¶16. He alleges that the third time staff served rice crispy treats for dessert, he was not there. Id. at ¶17.

The plaintiff states that on September 6, 2019, the main kitchen—which was under the direction of defendant Zwirschitz—sent rice crispy treat desserts to each unit in the prison on inmate meal trays. Id. at ¶13. He says this was the fourth time Oshkosh kitchen staff served rice crispy treats, and says he was forced to eat from the pork-contaminated tray (he did not eat the rice crispy treat) because he did not have any canteen items to substitute for his hunger. Id. at ¶18. According to the plaintiff, he had to eat from the tray because his Muslim faith forbids him from starving or harming himself, and because he takes medication that should be taken with food. Id.

The plaintiff allegedly filed an inmate complaint and "it was determined that the rice crispy treat be discontinued from the menu." Id. He says, however, that on November 4, 2019, under Zwirschitz's direction the plaintiff again was served a rice crispy treat dessert. Id. at ¶20.

The plaintiff says he does not object to the fact that the defendants are serving rice crispy treats, but that he takes issue with the defendants serving

4

pork products without notification that the item contains pork, and with the defendants' failure to provide an alternative meal. Id. at ¶21. He alleges that the defendants show a complete disregard for his religion. Id.

The plaintiff alleges that he filed another inmate complaint on November 18, 2019 and that after that complaint, Zwirschitz began placing an asterisk on the food service menu for the rice crispy treat dessert only. Id. at ¶22. The plaintiff states that even though that the asterisk now provides "a good sign of notifications" of pork products, this does not eliminate the fact that he already was exposed to pork products on his food service tray. Id.

The plaintiff alleges that on January 3, 2020, staff served rice crispy treat desserts with the dinner meal. Id. He states that he asked Sgt. Rucinski if he could get his tray "during early eaters" because there were rice crispy treats on the tray and he did not eat pork products. Id. at ¶23. According to the plaintiff, Rucinski refused his request and told the plaintiff that it did not matter if the dessert was on the tray and that he could eat when everybody else ate or not eat at all. Id. at ¶24. The plaintiff says—and it is not clear if he is quoting Rucinski here—"Early eaters is a time set for people who get diet trays, need tray assist, or workers could eat early to avoid causing trouble during the normal function of serving meals." Id. The plaintiff alleges that Rucinski intentionally denied his request to eat a tray that had no pork on it to prevent the plaintiff from exercising his religious beliefs. Id. at ¶25. The plaintiff says that he spoke with the unit manager, who told him he could eat with "early eaters" to avoid cross contamination. Id.

The plaintiff alleges that Warden Jess failed to train Zwirschitz on DOC policies and religious restrictions. Id. at ¶28. He also alleges that Secretary Carr failed to train subordinates to hire and train professionals who follow DOC polices regarding food-related religious restrictions. Id. Finally, he alleges that Jess and Carr failed to train officers on the proper protocol to sue when officers were made aware that an inmate's religion was being violated. Id. at ¶29.

The plaintiff seeks declaratory relief, attorneys' fees punitive and nominal damages. Id. at ¶¶30-33.

C. Analysis

The plaintiff sues all defendants in their official capacities, and he sues Zwirschitz, Rucinski and Jess in their individual capacities. Id. at ¶¶7-10. But the plaintiff may not proceed against any defendant in his or her official capacity because he seeks only declaratory relief and monetary damages. For purposes of obtaining damages other than injunctive relief, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). The court will dismiss defendant Carr because the plaintiff sues him for monetary relief in his official capacity.

The plaintiff sues Jess in her individual capacity, and he alleges that she failed to train Oshkosh staff on DOC policies. Section 1983 "does not authorize 'supervisory liability.'" Vinning-El v. Evans, 657 F.3d 591, 592 (7th Cir. 2011) (citing Iqbal, 556 U.S. at 675-76). Section 1983 "creates a cause of action

6

Case 2:20-cv-01288-PP   Filed 03/02/21   Page 6 of 11   Document 8

based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996)). Because §1983 makes public employees liable "for their own misdeeds but not for anyone else's," Burks, 555 F.3d at 596, a plaintiff must specifically allege what each individual defendant did (or did not do) to violate his constitutional rights. Supervisors can be held liable for constitutional violations caused by their staff where the violation happens at the supervisor's direction or with the supervisor's knowledge and consent. Hildebrant, 347 F.3d at 1039. For a supervisor to face liability, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. The plaintiff does not allege that Jess had any knowledge of or involvement in the decision to place rice crispy treats on the trays. The plaintiff has not stated a claim against Jess and the court will dismiss her.

The plaintiff references DOC policies that the defendants violated. Dkt. No. 1 at 5. A violation of prison rules, without more, does not state a violation of the Constitution. Owens v. Funk, 760 F. App'x 439, 443 (7th Cir. 2019) (citing Fuller v. Dillon, 236 F.3d 876, 880 (7th Cir. 2001)). The plaintiff may not proceed on any claims related to his allegations that the defendants violated DOC policy or prison rules.

"Prisoners retain the right to exercise their religious beliefs, although that right is not unfettered." Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir.

7

2009). Where prison officials "personally and unjustifiably place[] a substantial burden on [an inmate's] religious practices," they may violate an inmate's constitutional rights. Thompson v. Holm, 809 F.3d 376, 379-80 (7th Cir. 2016) ("We have repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden."). "A substantial burden '[p]uts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Id. (quoting Thomas v. Review Bd., 450 U.S. 707, 717-718 (1981)). "A burden is unjustified if it is not reasonably related to a legitimate penological interest." Id. To determine whether the burden is justified, a court must consider "(1) whether the restriction 'is rationally related to a legitimate and neutral governmental objective'; (2) 'whether there are alternative means of exercising the right that remain open to the inmate'; (3) 'what impact an accommodation of the asserted right will have on guards and other inmates;' and (4) 'whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns.'" Id. (quoting Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004)).

The court will allow the plaintiff to proceed on a First Amendment free exercise claim based on his allegations that Zwirschitz directed the service of food containing pork on the plaintiff's meal tray without offering an alternative and that, on one occasion, Rucinski did not allow the plaintiff eat early to avoid having that pork product served on his tray.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Carr and Cathy Jess.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Zwirschitz and Sgt. Rucinski. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the Warden of the Oshkosh Correctional Institution or her designee must collect from his institution trust account the **$328.36** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Oshkosh Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 2nd day of March, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**