UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**MAFAYETTE M. FIELDS,**

        **Plaintiff,**

v.                                           **Case No. 20-CV-1288**

**TODD ZWIRSCHITZ,** *et al.***,**

        **Defendants.**

**DECISION AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Mafayette M. Fields, who is representing himself and incarcerated at Oakhill Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Fields was allowed to proceed on a First Amendment free exercise claim against the defendants. He alleges that despite his religious objections, the defendants did not prevent him from receiving cross-contaminated food trays.

The parties filed cross-motions for summary judgment. (ECF Nos. 25, 29) Fields also filed an amended motion for summary judgment. (ECF No. 46.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 11.) For the reasons stated below, the defendants' motion for summary judgment is granted.

## PRELIMINARY MATTERS

On December 16, 2021, after the defendants filed their reply brief, Fields filed a motion to amend his response in opposition to the defendants' motion for summary judgment. (ECF No. 46.) He also filed an amended response, (ECF No. 47), and amended proposed findings of fact, (ECF No. 48). Fields explained that he was rushed in filing his original response due to limited library time. While the majority of his amended response is substantially similar to his original response, Fields does address the defendants' qualified immunity argument in his amended response, which he did not do in his original response. The defendants filed a reply to Fields' amended response, noting that their previously filed materials adequately address the merits of the First Amendment claim. (ECF No. 49) They also rebutted Fields' qualified immunity argument.

Because the defendants were able to adequately respond to the amended response materials, I will grant Fields' motion to amend his response and will consider the amended materials where appropriate in deciding the defendants' motion for summary judgment.

Additionally, the defendants note that Fields did not comply with the relevant Federal Rules of Civil Procedure and Civil Local Rules in preparing his response. (ECF No. 38 at 1.) Specifically, they state that Fields fails to support his proposed findings of fact with evidence from the record and relies on documentation he never submitted. District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited

evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Fields invokes 28 U.S.C. § 1746 in his amended complaint, which is enough to convert the amended complaint into an affidavit for the purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Fields's submissions where appropriate in deciding defendants' motion.

## FACTS

At all times relevant to this case, Mafayette Fields was incarcerated at Oshkosh Correctional Institution. (ECF No. 31, ¶ 1.) Defendant Todd Zwirschitz is the Food Administrator at Oshkosh. (*Id.*, ¶ 3.) Defendant Grant Rucinski is a Correctional Sergeant at Oshkosh. (*Id.*, ¶ 4.)

Fields is Muslim and under his religious beliefs, eating pork is forbidden. (ECF No. 27, ¶¶ 2, 9-10.) It is undisputed that to accommodate food restrictions due to religious beliefs, the Wisconsin Department of Corrections (DOC) offers special meal plans, including a Halal meal plan. (ECF No. 31, ¶ 6.) The Halal meal plan never includes pork and provides four meals per week containing Halal-certified meat. (*Id.*, ¶¶ 10-11.) For the other meals, either fish or plant-based meals are served. (*Id.*, ¶ 11.)

For those inmates who do not request special meal plans, the DOC offers a "general fare" meal plan, which generally does not include pork products. (*Id.*, ¶ 7.) However, individual institutions are allowed to substitute pork entrées two times

3

per week as long as they offer a non-pork entrée alternative. (*Id.*, ¶¶ 7-8.) When it comes to dessert items, though, the institution is not required to provide an alternative if the dessert contains pork by-product (*e.g.*, gelatin) because those are a treat and do not contain much nutritional value. (*Id.*, ¶¶ 8-9.)

Fields admits that he does not take a Halal meal plan but instead receives a general fare meal plan because he can "self-select from the general menu to avoid prohibited foods." (ECF No. 42, ¶ 10.) Fields contends that the Halal meal plan is not fully Halal because for seventeen meals per week, the Halal meal is plant-based, which Fields asserts is not Halal. (*Id.*, ¶ 11.) The defendants state that Fields testified in his deposition, "I don't like eating beans and I don't like eating plant-based, so I don't take the Halal diet." (ECF No. 31, ¶ 14.)

*Incidents Involving Rice Krispies Treats*

It is undisputed that Rice Krispies Treats contain gelatin in the marshmallows, so they contain a pork product. (ECF No. 42, ¶ 15.) Due to his religious beliefs, Fields cannot have a food tray that has a Rice Krispies Treat on it because it will cross-contaminate the food. (*Id.*) While the exact dates are unclear from the record, there appears to be five instances where Fields encountered Rice Krispies Treats. The first time Rice Krispies Treats were served on Fields's housing unit, the unit sergeant ensured that Fields received a tray without Rice Krispies treats. (ECF No. 1, ¶ 15; ECF No. 31, ¶ 16.) The second time Fields received a tray with Rice Krispies Treats, he elected to eat canteen items from his room. (ECF No. 1, ¶ 16, ECF No. 31, ¶ 18.) The third time Rice Krispies Treats were served, Fields

4

was not on the unit and had his meal elsewhere. (ECF No. 1, ¶ 17, ECF No. 31, ¶ 17.)

On September 6, 2019, Fields was served Rice Krispies Treats on his tray and because he had no alternatives such as canteen food, he ate the food off the contaminated tray though he did not eat the Rice Krispies Treat. (ECF No. 1, ¶ 18, ECF No. 31, ¶ 19.) Then, on December 30, 2019, Fields noticed Rice Krispies Treats were again being served. According to Fields, he asked Rucinski if he could get his tray as during "early eater" service to avoid the Rice Krispies Treat. (ECF No. 1, ¶ 23; ECF No. 42, ¶¶ 22-23.) "Early eater" services is the time reserved for those inmates who receive special diets or require extra assistance to acquire a meal, and according to Fields, it is the only time inmates may "self-select" their food, meaning he could have refused the Rice Krispies Treat. (ECF No. 1, ¶ 23; ECF No. 42, ¶¶ 22-23, 28.) Fields states Rucinski told him that it didn't matter if the Rice Krispies Treat was on the tray, he could either wait his turn to eat or not eat at all. (ECF No. 42, ¶ 22.) Rucinski states that Fields asked him if he could be first in line and when his request was denied, Fields chose to return to his cell without eating. (ECF No. 31, ¶ 24.) The defendants also state that Fields could "self-select" at any of the meal services and simply could have told the server he did not want the Rice Krispies Treat. (ECF No. 42, ¶ 28.)

Sometime after the September 2019 incident, Fields communicated with Zwirschitz and made him aware that a pork-contaminated item was on his food tray. (ECF No. 47, at 6.) According to Fields, Zwirschitz's response was not to eat

5

the pork item, completely disregarding the cross-contamination issue. (*Id.*) Fields provides no evidence of this conversation. Fields also states that in response to his communication, Zwirschitz simply could have arranged to have inmates who received general fare meals but still had religious restrictions to eat first to avoid the cross-contamination issue. (*Id.*)

Fields does not dispute that Zwirschitz was not present during any of the incidents in which his food was contaminated by the Rice Krispies Treat. (ECF No. 42, ¶¶ 26-27.) Nor does he dispute that Zwirschitz does not directly supervise meal service. (*Id.*)

Fields also states that sometimes after September 2019, in response to an inmate complaint (which Fields did not provide with his response), a decision was made to no longer serve Rice Krispies Treats. (ECF No. 1, ¶ 18.) However, on November 4, 2019, Zwirschitz directed the main kitchen to serve Rice Krispies Treats. (ECF No. 1, ¶ 20.) Fields states he then filed another inmate complaint on November 18, 2019 (again, Fields did not provide a copy with his response), and in response to that inmate complaint, Zwirschitz began placing an asterisk on the food service menu next to the Rice Krispies Treat to denote it contained pork. (ECF No. 1, ¶ 22.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

6

as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Fields claims that Zwirschitz and Rucinski violated his First Amendment rights when they did not take steps to prevent him from receiving a Rice Krispies Treat on his food tray. According to the Fields, the Rice Krispies Treat contains pork by-product which contaminates his food tray even if he does not eat it. "Prisoners retain the right to exercise their religious beliefs, although that right is not unfettered." *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). To survive summary judgment on a free exercise claim, a prisoner plaintiff must "submit evidence from which a jury could reasonably find that the defendants personally and unjustifiably placed a substantial burden on his religious practices." *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016). "A substantial burden 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 717-18 (1981)). As it relates to meals, the Court of Appeals for the Seventh Circuit has "repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden." *Id.*

However, "[d]e minimus burdens on the free exercise of religion are not of constitutional dimension." *Rapier v. Harris*, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999). The Seventh Circuit has held that absent allegations of "a routine or blanket practice of denying [a plaintiff] pork-free meals," missing a few meals out of many "does not constitute more than a de minimus burden on [the plaintiff's] free exercise

of religion." *Id.* In *Raiper*, the plaintiff missed 3 meals out of 810 because those three meals contained pork or pork by-product. *Id.*

Similarly, in *Pirtle v. Brooks*, Case No. 19-C-1078, 2020 WL 6273398 (E.D. Wis. Oct. 26, 2020), Judge William C. Griesbach, relying on *Rapier*, determined that where a plaintiff missed two meals because one meal contained a pork chop and one meal was a breakfast cereal with marshmallows, the missed meals amounted to no more than a de minimus burden on the plaintiff's free exercise rights. *Id.* at * 3. The plaintiff in *Pirtle*, like Fields, elected to receive a general fare meal, and Judge Griesbach noted that he "chose to receive the general fare diet instead of requesting a religious diet that would accommodate his beliefs. As a result of that choice and the fact that any burden on the free exercise of his religion was de minimus, no reasonable juror could conclude that Defendants forced [the plaintiff] to choose between necessary nutrition and religious practice." *Id.*

Fields' case is substantively indistinguishable from *Pirtle*, and as such, he fails to demonstrate that the defendants placed a substantial burden on his free exercise rights by failing a handful of times to prevent him from receiving a Rice Krispies Treat. Even resolving the factual disputes in a light most favorable to Fields, a reasonable factfinder could not conclude that Fields's free exercise rights were substantially burdened. Regarding Runcinski, even if he refused to accommodate Fields's request to have a tray not contaminated by a Rice Krispies Treat, that was an isolated incident and not evidence of "a routine or blanket

9

practice." At most, this was a de minimus burden. Summary judgment is granted in favor of Runcinski.

Turning to Zwirschitz, Fields does not dispute that Zwirschitz was not present during any of the five occasions where Rice Krispies Treats caused an issue, nor does he dispute that Zwirschitz did not directly supervise any meal service. Fields also presents no evidence that at the time of each Rice Krispies incident, Zwirschitz had any knowledge that Fields was being served Rice Krispies Treats, which is required to hold Zwirschitz liable under a theory of supervisor liability. *See Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (Supervisors can be held liable for constitutional violations caused by their employees where the violation happens at the supervisor's direction or with the supervisor's knowledge and consent). Even if Fields had properly supported his assertions with evidence that he communicated his concerns about the Rice Krispies Treats to Zwirschitz and even if these communications amounted to the requisite knowledge, Fields only had issues with Rice Krispies Treats five times at most, which, as explained above does not rise to the level of a constitutional violation because it is a de minimus burden. Summary judgment is granted in favor of Zwirschitz.

## CONCLUSION

The defendants' motion for summary judgment is granted and Fields' motion for summary judgment is denied. The case is dismissed. The defendants also argued

that they were entitled to qualified immunity. Because summary judgment is granted on the merits, I need not address the qualified immunity argument.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Fields's motion to amend his summary judgment response (ECF No. 46) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 20) is **GRANTED.**

**IT IS FURTHER ORDERED** that Fields's motion for summary judgment (ECF No. 25) is **DENIED**.

**IT IS FURTHER ORDERDED** that the case is **DISMISSED** The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case

Dated at Milwaukee, Wisconsin this 31st day of May, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge